[No. D043425. Fourth Dist., Div. One. Feb. 7, 2005.]

CITY OF SAN DIEGO, Plaintiff and Appellant, v.
D.R. HORTON SAN DIEGO HOLDING COMPANY, INC., Defendant and
Respondent.

669

**Counsel**

Meyers, Nave, Riback, Silver & Wilson, David W. Skinner, Robert C. Chojnacki and Stefanie Y. Gandolfi for Plaintiff and Appellant.

Rutan & Tucker, Jeffrey M. Oderman and Douglas J. Dennington for Defendant and Respondent.

## OPINION

**O'ROURKE, J.**—In this eminent domain action, the City of San Diego (City) sought to acquire approximately 12.69 acres of property from a larger parcel owned by D.R. Horton San Diego Holding Company, Inc. (Horton) for a particular segment of the State Route 56 freeway project. In a special verdict, the jury determined that the fair market value of the property taken was $5,589,200, that severance damages to the remainder parcel before consideration of the project's benefits was $5,324,000, and that the project benefits were $5,443,800. Based on these figures, the jury determined there were no net severance damages and the total compensation to be awarded Horton was $5,589,200. On Horton's motion for new trial, the trial court concluded the jury's determination of the value of the property taken in its special verdict was based on a valuation of $445,000 per net developable acre, and its award of severance damages was based on a figure derived from a value of $850,000 per net developable acre. The court granted the motion on the ground the jury's findings as to these components were internally inconsistent and thus against the law.

City contends the court erred in granting a new trial because each of the jury's separate valuation findings, including its finding as to severance damages before consideration of benefits, was within the range of values provided by the parties' expert appraisers and therefore the verdict was not against the law. It further argues a reasonable interpretation of the record demonstrates substantial evidence supporting the jury's findings as to the value of the property taken and severance damages before consideration of project benefits. Alternatively, City argues the jury's finding, if found to be inconsistent, was invited by the jury instructions and special verdict form, and also is harmless error. Finally, City argues the jury's verdict must stand as a matter of public policy because to rule otherwise would divest juries in eminent domain actions of their broad discretion in determining the appropriate amount of just compensation.

■ We conclude the jury implicitly made inconsistent findings of fact in its special verdict, rendering the verdict against the law. We reject City's other contentions and accordingly, affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

City filed the present eminent domain action to acquire approximately 12.69 acres of a larger 39.38-gross-acre parcel of land for a certain segment—Unit 2 of the middle segment—of State Route 56 (SR-56).[1] Horton owned the approximately 39-acre parcel (the larger parcel), which was to be bisected diagonally by SR-56, leaving two isolated remnant parcels to the north and south (collectively the remainder).

At trial, the ultimate issue of just compensation for the 12.69 acres to be taken by City turned upon the development potential of the larger parcel absent the SR-56 Unit 2 project (hereafter the freeway project). Both parties agreed that there was a reasonable probability of a zone change, but they differed as to the extent of the allowable development that would be approved. City's expert real estate appraiser, Stephen Roach, opined that without the freeway (the "before" condition), the highest and best use of the subject property was for development at one residential unit per two gross acres. Based on that use, Roach valued the part taken at $4,925,000. He arrived at this conclusion by using a market data/sales comparison analysis, which resulted in his conclusion that the fair market value of the larger parcel was $400,000 per net acre. Roach applied that value to the 37.09 net developable acres he found within the larger parcel to arrive at a total value of $14,836,000 for the larger parcel, and applied the same value to the 12.31 net acres of the part taken. As to the value of the remainder with the freeway project in place (the "after" condition), Roach concluded there were no net severance damages because the benefits from the freeway project amounted to $5,443,800, thereby exceeding the severance damages.[2]

Horton's expert witnesses testified that the highest and best use of the larger parcel in the before condition was the same suburban residential density (low-to-medium residential) as had been actually approved on the remainder with the freeway project. In accordance with this conclusion,

---

[1] In *City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1019–1021 [130 Cal.Rptr.2d 108], this court summarized the background and development history of the area known as Torrey Highlands, within which the property at issue here is located, and also SR-56.

[2] Roach determined that the remainder parcel before benefits suffered a reduction in value of $35,000 per net acre and was thus valued at $9,044,700, resulting in severance damages of $867,300. However, Roach calculated benefits from the freeway project at $5,443,800 as a result of the higher potential development density. Because the project benefits outweighed the severance damages, Roach found there were no net severance damages, and thus his conclusion as to total value was $4,925,000.

Horton's expert real estate appraiser, Michael Waldron, testified that the fair market value of the property taken by City's condemnation was $10,676,000. He reached this result by using a sales comparison approach to determine that with that level of density, the fair market value of the larger parcel in the before condition would be about $850,000 per net acre, or approximately $31 million. Applying this same value, Waldron calculated the value of the property taken at $10,676,000, and then with subtraction, determined the value of the remainder property to be $20,324,000. Relying again on his sales comparison approach to determine that the fair market value of the remainder property in the after condition was $15 million (or $747,757 per acre), he testified that severance damages amounted to $5,324,000. Waldron bolstered his conclusion by using a different method of calculating severance damages by totaling increased costs, impacts, and inefficiencies stemming from SR-56 Unit 2 as different components,[3] resulting in severance damages in the range of $5.4 million. Waldron further concluded that there were no project benefits, and therefore nothing to offset his conclusion as to severance damages. Thus, he ultimately opined that the total just compensation to Horton was $16 million.

Both parties submitted their own version of a special verdict form; the trial court used City's form without objection by Horton's counsel. Thereafter, the jury were instructed they were to separately determine: (1) the fair market value of the 12.69 acres of property taken as of the stipulated November 16, 2001 date of valuation; (2) the severance damages sustained as a result of City's taking and/or the construction and use of the project in the manner proposed by City; and (3) the benefits, if any, the project conferred on the remainder parcel. They were further instructed: "You must determine the fair market value of the subject property and the severance damages, if any, and benefits, if any, only from the opinion of the witnesses who have testified. You may not find that the market value of the property being acquired by the plaintiff and the severance damages, if any, of the benefits, if any, to be less than or more than that testified to by any witness. [¶] While expert witnesses may express opinions on the issue of value, those opinions are worth no more than the reasons and factual data upon which they are based."

After closing arguments, the court explained the verdict form to the jury. In part, it said: "In this case, the special verdict form consists of two pages. On

---

[3] These were the loss of developable area, the increased costs for berms and sound walls, the cost of the Torrey Meadows Drive extension, the loss of development efficiencies due to fixed costs having to be spread over fewer acres, diminution in value due to the proximity of the freeway, facilities benefit assessment fees, and mitigation costs.

the form are a series of questions. For example, Question No. 1 asks you to determine the fair market value of the part taken as of the November 16, 2001 date of value. Now you can find the fair market value is a value testified to by one of the witnesses, or you can find it's some value in between the highest and lowest value stated by the witnesses. That's your decision."

The jury's verdict was as follows, with handwriting in "{ }" brackets: "We the jury in the above-entitled action, make the following findings:

"1. The fair market value of the 'part taken' as of the November 16, 2001 date of value is \${5,589,200}.

"2. Net severance damages

"a) The severance damages to the 'remainder' as a result of the City's acquisition of the 'part taken,' and/or as a result of the SR 56 [P]roject are \${5,324,000}.

"b) The benefits (if any) to the 'remainder' as a result of the SR 56 Project are \${5,443,800}.

"c) The net severance damages to the 'remainder' (subtract (b) from (a)) are \${0}.

"[Note: The net severance damage cannot be less than 0. If (b) exceeds (a), the net severance damage should be 0.]

"3. The final just compensation to be paid by the plaintiff to defendant (add 1 to 2(c)) is \${5,589,200}."

Horton moved for a new trial on grounds the jury's responses to the special verdict questions were "mutually inconsistent and irreconcilable and unsupported by any evidence" and that its damage award was inadequate, warranting a new trial under Code of Civil Procedure section 657, subdivisions 5 and 6. It pointed out the jury's finding as to fair market value of the part taken worked out to a value of $445,000 per net developable acre. However, this finding, Horton argued, was hopelessly inconsistent with the jury's finding of $5,324,000 in severance damages, which corresponded exactly to the amount testified to by the defendant's appraiser based on an $850,000 per developable acre valuation. It maintained the inconsistency in the jury's verdict rendered it against the law, requiring a new trial under Code of Civil Procedure section 657, subdivision 6.

In response, City argued the jury's verdict on severance damages fell within the range of the experts' testimony, and that its total compensation award was not based on doubt or confusion because it was in an amount falling in between the two parties' requested awards. It further argued that the jury's findings, even if inconsistent, amounted to harmless error because even assuming the jury should have awarded a lesser amount for severance damages, it would not have made any difference to the jury's ultimate award because given the offsetting project benefits, the net severance damages would still be zero.

The trial court initially denied Horton's motion. However, following arguments on the matter, it granted the motion on grounds the jury's valuations as to fair market value of the part taken and severance damages were irreconcilably inconsistent: "[T]he jury found the fair market value of the 'part taken' to be $5,589,200. Since there were 12.56 acres subject to development, this resulted in a value of $445,000 per acre. [¶] In determining severance damages in Question No. 2(a), the jury found the severance damages to the 'remainder parcel[,'] before considering benefits to the parcel, to be $5,324,000. This is the exact figure suggested by D.R. Horton's appraiser. To arrive at this figure requires a value of $850,000 per acre for both the 'larger parcel' and the 'part taken[.'] [¶] The inconsistency between the values utilized by the jury in answering Question[] Nos. 1 and 2(a) cannot be reconciled based on the evidence submitted at trial. Accordingly, the motion for new trial is granted."

## DISCUSSION

### I. *Standard of Review*

The parties dispute the proper standard of review. City contends this court should apply de novo review based on several principles: (1) that it is error to grant a new trial based " 'exclusively upon an erroneous concept of legal principles applicable to the cause' "; (2) that the matter involves application of law to undisputed facts; and (3) a verdict is against the law only if the evidence supporting it is insufficient in law and without conflict on any material point.

Horton contends that new trial orders generally, and particularly those based on a claim that the verdict is against the law, are reviewed for abuse of discretion. It concedes a trial court is not charged with reweighing evidence

when a party raises a claim that a verdict is against the law. However, it maintains that principle does not convert the appellate review to a de novo standard.

We agree with Horton that as a general matter, orders granting a new trial are reviewed for abuse of discretion. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493]; see also *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 [93 Cal.Rptr.2d 60, 93 Cal.Rptr.2d 60, 993 P.2d 388].) However, " 'any determination underlying [the] order is scrutinized under the test appropriate to such determination.' " (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 [17 Cal.Rptr.3d 302, 95 P.3d 523], quoting *Aguilar, supra,* 25 Cal.4th at p. 859.) Here the trial court's new trial order was based on its determination that two of the jury's special verdict findings were inconsistent with each other.

"[A] special verdict's correctness must be analyzed as a matter of law." (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 303 [96 Cal.Rptr.2d 605]; see *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285 [73 Cal.Rptr.2d 596].) Other principles governing review of a claim of inconsistency in a verdict depend on the type of verdict rendered. When a special verdict is involved as here, a reviewing court does not imply findings in favor of the prevailing party. (*Trujillo v. North County Transit Dist.*, at p. 285; *Mendoza v. Club Car, Inc.*, at p. 303; *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960 [17 Cal.Rptr.2d 242] (*Myers*).) This rule stems from the nature of a special verdict and its " 'recognized pitfalls,' " namely, that it requires the jury to resolve all of the controverted issues in the case, unlike a general verdict which merely implies findings on all issues in one party's favor. (*Myers*, at pp. 959–960; *Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 855 [239 Cal.Rptr. 862]; Code Civ. Proc., §§ 624, 625.[4]) Under these circumstances, " ' "[t]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . ." ' " (*Myers*, at p. 960; see *Falls v. Superior Court*, at p. 855.)

---

[4] "In all cases, the court may direct the jury to find a special verdict in writing, upon all, or any of the issues." (Code Civ. Proc., § 625.) "The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)

■ Inconsistency between special findings of fact and a general verdict is analyzed under a different set of rules. Code of Civil Procedure section 625 provides, in pertinent part, that "[w]here a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly." And a general verdict will not be set aside unless there is no possibility of reconciling the general and special verdicts under any possible application of the evidence and instructions. (See *Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 540–541 [138 Cal.Rptr. 705, 564 P.2d 857], overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1183 [79 Cal.Rptr.2d 657]; *Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 668, 689 [180 Cal.Rptr. 843].) But this rule of reconciliation does not apply to inconsistencies between questions in a special verdict because, as stated, " 'there is no such presumption in favor of upholding a special verdict.' " (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 366 [129 Cal.Rptr.2d 336], quoting *Mendoza v. Club Car, Inc., supra,* 81 Cal.App.4th at p. 303.)

## II. *Principles of Eminent Domain*

■ To help understand the elements of the jury's special verdict, we briefly set out the relevant compensation principles in eminent domain proceedings. "Article I, section 19, of the California Constitution requires that the owner whose private property is taken or damaged for a public use be paid just compensation. The federal Constitution similarly provides that private property not be taken for public use without just compensation." (*City of San Diego v. Neumann* (1993) 6 Cal.4th 738, 743 [25 Cal.Rptr.2d 480, 863 P.2d 725].) ■ Our Legislature provides that the measure of compensation for property taken under the government's powers of eminent domain is its "fair market value." (*Ibid.*; Code Civ. Proc., § 1263.310; *San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 925 [62 Cal.Rptr.2d 121] (*Cushman*).) It defines fair market value as "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available." (Code Civ. Proc., § 1263.320, subd. (a); see *Cushman*, at p. 925.)

■ To ascertain the fair market value of a property being condemned in an eminent domain proceeding, there must be a determination of the highest and best use to which the property being condemned can be put, absent any increase or decrease in value attributable to the project itself or project influences. (See *City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1028–1029 [130 Cal.Rptr.2d 108].) "Moreover, '[a] determination of the property's highest and best use is not necessarily limited to the current zoning or land use restrictions imposed on the property; the property owner "is entitled to show a reasonable probability of a zoning [or other change] in the near future and thus to establish such use as the highest and best use of the property. [Citations.]" [Citations.] The property owner has the burden of showing a reasonable probability of a change in the restrictions on the property.' " (*Id.* at p. 1028; see also *City of San Diego v. Neumann, supra*, 6 Cal.4th at p. 744.)

■ "Once the highest and best use of the property is determined, one of several approaches to valuation must be selected. Evidence Code sections 815–820 set forth various methodologies sanctioned for use by valuation experts, including considering sales contracts of comparable properties (Evid. Code, § 816) and capitalizing income from the subject land and its existing improvements (Evid. Code, § 819)." (*Cushman, supra*, 53 Cal.App.4th at p. 926.)

■ "When property acquired by eminent domain is part of a larger parcel, in addition to compensation for the property actually taken, the property owner must be compensated for the injury or damage, if any, to the land that he retains, reduced by the amount of benefit to the remainder." (*City of Carlsbad v. Rudvalis* (2003) 109 Cal.App.4th 667, 678–679 [135 Cal.Rptr.2d 194], citing Code Civ. Proc., § 1263.410 and *City of San Diego v. Neumann, supra*, 6 Cal.4th at p. 744.) Such "severance damages" are typically measured by comparing the fair market value of the remainder before and after the taking. (*City of Carlsbad v. Rudvalis*, at p. 679; *City of San Diego v. Neumann*, at p. 744.) "In other words, 'The value of the remaining property taken as a part of the whole, described as the "before condition," must be compared with the value that portion has as a result of the take and the construction of the improvement in the manner proposed, described as the "after condition." Damages are computed simply by subtracting the market value of the remainder in its after condition from the market

value of the remainder in its before condition.' " (*Cushman, supra,* 53 Cal.App.4th at p. 926, quoting 1 Condemnation Practice in Cal. (Cont.Ed.Bar 1995) Severance Damages, § 5.9, p. 198.)

## III. *Analysis*

### A. *The Jury Rendered Inconsistent Special Verdict Findings by Implicitly Finding the Same Property to Have Two Different Fair Market Values in the Before Condition*

On appeal, the City repeats its contention that the jury's verdict must be upheld because its findings as to each item on the special verdict form was within the range of the values testified to by the City's and Horton's expert witnesses. In making this contention, it relies on numerous authorities regarding the jury's role in assessing expert testimony in general and in an eminent domain proceeding, particularly that the jury " 'may accept the evidence of any one expert or choose a figure between them based on all of the evidence' " (*Cushman, supra,* 53 Cal.App.4th at p. 931), and it "cannot render a verdict higher or lower than 'that shown by the testimony of the witnesses.' " (*People ex rel. Dept. Pub. Wks. v. Jarvis* (1969) 274 Cal.App.2d 217, 226–227 [79 Cal.Rptr. 175].)[5] City argues the jury is not bound by the valuation opinion of an appraiser, and citing *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 636 [188 Cal.Rptr. 913], that it may " 'accept the evidence of any one expert or choose a figure between them based on all of the evidence.' "

Horton does not challenge these principles. It maintains these rules do not override the independent rule that a jury's special verdict findings must be internally consistent and logical. We agree with Horton.

---

[5] City also relies on the principle, taken from a dissenting opinion, that the concept of just compensation cannot be reduced to a formula. (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 731 [66 Cal.Rptr.2d 630, 941 P.2d 809] (conc. & dis. opn. of Kennard, J.).) Justice Kennard's comments were made in connection with her challenge to the majority's holding that a landowner's recovery for damage to the remainder should be reduced by the amount of all benefits, whether special or general, to the remainder, and her disagreement with its position that the distinction between special and general benefits is uncertain and cannot be consistently applied. (*Id.* at pp. 722–723, 730–731.) She concurred in the portion of the majority opinion that concluded the trial court did not abuse its discretion in denying litigation costs. (*Id.* at p. 735.) The proposition is not based on controlling authority, and we therefore do not consider it. (E.g., *In re Marriage of Bryant* (2001) 91 Cal.App.4th 789, 795 [110 Cal.Rptr.2d 791] ["A dissenting and concurring opinion is not controlling"], limited on other grounds in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1099–1100 [12 Cal.Rptr.3d 356, 88 P.3d 81].)

"Inconsistent verdicts are ' "against the law" ' " and are grounds for a new trial. ( *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344 [100 Cal.Rptr.2d 446]; Code Civ. Proc., § 657, subd. 6; see *Morris v. McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 973 [132 Cal.Rptr. 37] (*Morris*).) "The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence. The rule finds parallel expression in the law relating to court findings: 'Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error.' " (*Cavallaro v. Michelin Tire Corp.* (1979) 96 Cal.App.3d 95, 101 [157 Cal.Rptr. 602]; see also *Morris*, 60 Cal.App.3d 964, 970.) An inconsistent verdict may arise from an inconsistency between or among answers within a special verdict (*Mendoza v. Club Car, Inc.*, *supra*, 81 Cal.App.4th at p. 303) or irreconcilable findings. (*Campbell v. Zokelt* (1969) 272 Cal.App.2d 315, 318–319 [77 Cal.Rptr. 561].) Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law. (E.g., *Morris*, at p. 973.) ▮ The appellate court is not permitted to choose between inconsistent answers. (*Ibid*; see also *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345–1346 [100 Cal.Rptr.2d 446].) Although the court here did not expressly state that the verdict was against the law in its order, we may affirm the order on this ground because it was raised in Horton's motion. (See *Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 160 [190 Cal.Rptr. 815]; *Don v. Cruz* (1982) 131 Cal.App.3d 695, 705 [182 Cal.Rptr. 581].)

Here, the jury implicitly made inconsistent findings of fact—on the fair market value of the subject property in the before condition—when it reached its conclusions as to the fair market value of the property taken on the one hand ($5,589,200, special verdict question No. 1), and the severance damages to the remainder before considering project benefits on the other ($5,324,000, special verdict question No. 2(a)). City's and Horton's experts testified at trial that the developable acreage contained in the part taken was respectively 12.31 or 12.56 acres; City in closing arguments essentially conceded small discrepancies in acreage. Both experts calculated the fair market value of the part taken by the number of developable acres multiplied by their "per-acre" value conclusions reached as to the larger parcel in the before condition. There was no other method or evidence from which the jury could reach conclusions about that property's fair market value. By implication, the jury, adopting Horton's 12.56 acreage figure and considering these methods, found the fair market value of the property taken to be $445,000 ($5,589,200, divided by 12.56) per developable acre.

This implicit finding, however, was inconsistent with the jury's implicit fair market value determination in special finding 2(a) as to severance damages before consideration of project benefits. By law, as reflected in the jury instructions, the sum of $5,324,000 in severance damages had to be based on the "difference in value of the remaining part before and after the taking." (*Cushman, supra,* 53 Cal.App.4th at p. 926.) The number, which corresponds exactly to Horton's expert Waldron's testimony, was necessarily premised on a "before" condition fair market value of the subject property at $850,000 per developable acre. Thus, the jury rendered irreconcilable special verdict findings based on different per-acre values for the same parcel of property: by its answer to special verdict question No. 1, it found the larger parcel before the freeway project to be worth $445,000 per acre, and by its answer to special verdict question No. 2(a), it found the same property at the same point in time to be worth $850,000 per acre. These inconsistent and irreconcilable implied findings render the special verdict against the law.

We are not persuaded by City's reliance on the proposition that in eminent domain proceedings the jury is not required to adopt any one expert's valuations or methodologies. In *Cushman, supra,* 53 Cal.App.4th 918, for example, the jury's $322,217 severance damage verdict fell in between the respective conclusions testified to on severance damages: zero by the plaintiff's expert, and $370,500 by the defendant's expert. (*Id.* at p. 931.) Under these circumstances, the court upheld the verdict on the ground the "jury had the power to give whatever weight it chose to the evidence in making its final determination" and could " 'accept the evidence of any one expert or choose a figure between them based on all of the evidence.' " (*Cushman, supra,* 53 Cal.App.4th at p. 931; accord, *People v. Southern Pacific Co., supra,* 139 Cal.App.3d at p. 636 [court rejected claim that jury's property damage awards were irrational where amounts for property damages "fell between the considerably lower estimate of appellants' expert and the considerably higher estimate of respondents' expert"].) In *City of Los Angeles v. Retlaw Enterprises, Inc.* (1976) 16 Cal.3d 473 [128 Cal.Rptr. 436, 546 P.2d 1380], the plaintiff city challenged the jury's award of $14,350,000 to the property owner as excessive. (*Id.* at pp. 491–492.) The jury's award fell between the defendant's experts' fair market valuation of $21 million and the city's experts' of $4 million. (*Id.* at pp. 478, 491.) The court found the award reasonable, cautioning that it was not its province to substitute its evaluation of the evidence for that of the jury. (*Id.* at p. 492.) None of the cases involve the particular circumstances present here, where special findings in a verdict form are implicitly based on different fair market values for the same parcel of property at the same point in time.

The authorities relied upon by City would permit the jury in this case to reach a fair market value of the subject property between Roach's $400,000 figure, and Waldron's $850,000 figure, and apply that value to determine the various components in figuring just compensation. They do not, however, permit a jury to reach different, inconsistent, factual findings in a special verdict as to fair market value for the same property in the before condition.

City further seeks to distinguish eminent domain actions from other cases involving inconsistent verdicts. It maintains the doctrine of inconsistency arises where a cause of action is derivative of another or where an answer to a special verdict question necessarily implies a fact such as the liability of a defendant. According to City, the rationale by which inconsistent verdicts are against the law—that fact finders must not reach "inconsistency of result based upon the same set of facts" (*Morris, supra*, 60 Cal.App.3d at p. 970)— does not apply to eminent domain cases because there is no need to prove liability and the jury determines fair market value based on a range of values presented by appraisers. We disagree with this analysis, as we have already concluded that the jury's answers to special finding Nos. 1 and 2(a) did necessarily imply facts as to the fair market "per-acre" value of the property in the before condition, and reflected inconsistent results on that element.

For the above stated reasons, we hold the trial court did not abuse its discretion in granting a new trial based upon the jury's inconsistent special verdict findings.

## B. *Sufficiency of the Evidence Argument*

City contends that even if the verdicts appear inconsistent, they must be harmonized if there is any possibility of reconciling them under the evidence and instructions. Based on various scenarios from the evidence, it argues there are several explanations as to how the jury could have reached their figures as to the lesser value of the property taken, and higher severance damages, including by adopting Waldron's alternative cost study approach to calculating severance damages.

There are several flaws with this argument. First, as we have explained in part I, *ante*, the "reconciliation" doctrine is inapplicable to special verdict findings, and thus we will draw no presumptions in favor of upholding the special verdict. (*Mendoza v. Club Car, Inc., supra*, 81 Cal.App.4th at p. 303.) Second, in opposition to Horton's motion for new trial and also in arguments before the trial court on that motion, City did not

attempt to reconcile the verdicts by pointing to the evidence presented at trial. As Horton points out, City merely argued the verdicts were within the range testified to by the experts; that the jury did not approach severance damages by using a per-acre value but only looked at the ultimate issue of net severance damages; and that the jury's severance damage number did not matter because the project benefits exceeded that number, resulting in an ultimate conclusion of zero net severance damages. ▮ Contentions or theories raised for the first time on appeal are not entitled to consideration. (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 [74 Cal.Rptr.2d 101]; *People ex rel Dept. Pub. Wks. v. Hamud* (1967) 254 Cal.App.2d 593, 596 [62 Cal.Rptr. 266], citing *Damiani v. Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780] & *Glendale Unified School Dist. v. Vista del Rossmoyne Co.* (1965) 232 Cal.App.2d 493, 496–497 [42 Cal.Rptr. 899].) And the exception to this rule for questions of law (*McDonald's Corp.*, at p. 618; *Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 920 [59 Cal.Rptr.2d 474]) does not apply here. A party should not be required to defend against a new theory on appeal where " ' "the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial. . . ." ' " (*Strasberg*, at p. 920.)

## C. *Harmless and Invited Error*

City contends that even if the jury's finding on severance damages before benefits is inconsistent with its finding on the value of the part taken, it is harmless error because any amount of severance damage reached by the jury would have been cancelled out by their determination of over $5.4 million in project benefits. City further argues that the special verdict is completely in accordance with the jury instructions (which, City points out, "did not direct the jury to use a consistent per-acre value or even suggest that they do so") and special verdict form, and as a consequence, Horton's failure to object to those matters or propose additional instructions or special verdict findings invited any error in the jury's verdict. We reject both contentions.

▮ In advancing its harmless error argument, City essentially asks that we credit the jury's finding as to project benefits, and discredit its finding as to severance damages before benefits. Because this court is not entitled to draw inferences in favor of the jury's special verdict findings, we cannot conclude the jury's determination of project benefits should stand while the jury's determination of severance damages before project benefits should fail. (E.g., *Morris, supra*, 60 Cal.App.3d at p. 973; *Shaw v. Hughes Aircraft Co., supra*, 83 Cal.App.4th at pp. 1345–1346 [on finding of inconsistent verdicts

as to breach of contract and breach of implied covenant of good faith and fair dealing, court stated the plaintiff was "no more entitled than [the defendant] to have the favorable verdict credited and the unfavorable one disregarded]".)

As for the doctrine of invited error, we disagree it applies here. City maintains Horton could have requested additional special verdict findings as to how the jury calculated severance damages or submitted jury instructions directing the jury to use a consistent per-acre value, but did not, nor did it object to the instructions and verdict used. The flaw with this argument is that the separate jury instructions, and the verdict form itself, were correct in form and content, and indeed Horton did not complain in the trial court and does not claim here that the instructions or verdict form were erroneous. Rather, Horton's contention is that the jury implicitly made inconsistent determinations of fact—that the subject property was worth $450,000 per acre and that it was worth $850,000 per acre—in reaching its conclusions as to fair market value of the part taken and severance damages before consideration of project benefits. Under these circumstances, we find no reason for Horton to have submitted a jury instruction requiring the jury to apply a consistent theory of valuation for the various components used in arriving at just compensation for Horton.

## D. *Public Policy*

City argues the jury's verdict should stand as a matter of public policy; that the trial court's decision to grant a new trial in these circumstances invades the jury's domain and will in the future require the jury to "accept the entire testimony of an expert appraiser or face having its verdict overturned on the ground that their values are somehow inconsistent." Horton, on the other hand, argues the trial court recognized the jury returned a fatally inconsistent and irreconcilable verdict, and that public policy mandates a jury charged with determining the complex issue of constitutionally mandated just compensation must do so in a logical and consistent manner.

We see no compelling policy reason to permit a jury's special verdict in an eminent domain action to stand if the findings reveal an inherent factual inconsistency, as here, with respect to fair market value of the larger parcel. When parties submit a special verdict to the jury, they face the danger of having the jury reach inconsistent findings of ultimate fact that may warrant a new trial. We set no wide precedent by our holding affirming the trial court's grant of a new trial in these very narrow circumstances.

## DISPOSITION

The order is affirmed.

Haller, Acting P. J., and Aaron, J., concurred.