Filed 5/20/16  De Leon v. De Dios CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARCO DE LEON, | |
| Plaintiff and Respondent, | G051995 |
| v. | (Super. Ct. No. 30-2012-00606511) |
| JESUS DE DIOS et al., | O P I N I O N |
| Defendants, Cross-complainants and Appellants; | |
| SONG OH YANG et al., | |
| Defendants, Cross-defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Reversed and remanded.

Printemps & Kaufman and Nancy Kaufman for Defendants, Cross-complainants and Appellants.

Treyzon & Associates, Federico Castelan Sayre, Boris Treyzon and Yolanda M. Medina for Defendants, Cross-defendants and Respondents.

Treyzon & Associates, Federico Castelan Sayre, Boris Treyzon and Yolanda M. Medina for Plaintiff and Respondent.

\*          \*          \*

This appeal is by Jesus De Dios and his wife Irma De Dios,[1] and their corporation Lindo Nayarit, Inc. (defendants), from a judgment in favor of Marco De Leon (plaintiff) for personal injury after he was stabbed outside defendants' bar. The key liability issues were tried before a jury, which determined De Leon was entitled to a judgment for $200,000 based on his damages. The trial court found in De Leon's favor on certain issues reserved for a bench phase of the trial and ordered defendants pay another $244,673.02.

Defendants allege numerous errors. The one which is the focus of this opinion is the fatally defective special verdict form, which only included defendants in the list of parties who were potentially liable for De Leon's injury. Most notably, the verdict form the jury used does not include the individual who stabbed De Leon. We conclude this was prejudicial error, leaving defendants holding the entire bag for an indisputably criminal act. We therefore reverse and remand for further proceedings.

I

FACTS

A. *Underlying Facts*

Jesus and Irma are the sole owners, officers and directors of Lindo Nayarit, Inc. (Lindo). At the time relevant here, Lindo owned two bars in Fullerton, including El Diamante Bar (the bar), which they began operating in 2003 or 2004. Song Oh Yang (Yang) and his wife, Sue Hee Yang, bought the strip mall in which the bar was located in 2008. They assumed the lease Jesus had signed.

The lease required the landlord to provide a security guard on the property from 9:00 in the evening until 6:00 in the morning "to discourage unlawful and other

---

[1] Jesus and Irma De Dios are subsequently referred to by their first names where it is necessary to refer to them separately. This is for the ease of the reader, and no disrespect is intended.

detrimental behavior and activities from occurring." According to Jesus, the landlord never provided a security guard, but he never sent a notice to the landlord, as required by the lease, addressing the purported default. Jesus hired his own security guard from Santa Ana Security after he began operating the bar. The guard's duties were to help maintain order inside, including checking identification. The guard had no responsibilities outside the bar.

The lease also included a clause under which the defendants would indemnify the landlord against all claims arising from their business. Defendants were required to carry $1 million in liability insurance and name both the landlord and the landlord's agent as additional insureds.

On November 26, 2010, De Leon went to the bar with his friends Wilson Garcia and Dimas Delgado. He had been there 10 or 15 times before. He had three to four beers before he left home. At the bar, De Leon shared approximately 18 to 24 beers with his two friends during the evening. At one point, he needed to use the restroom but found the door stuck or unable to move. He went to the security guard who pushed on the door and asked for those inside to open it. The door opened and three or four men were inside. They asked De Leon why he had called security, and then left. When De Leon exited the restroom, the same individuals were outside the door. De Leon returned to his friends. One of the men approached him and pushed him, calling him a "son of a bitch." De Leon reported this to the security guard, who moved the men to their table.

De Leon and his friends stayed in the bar another hour. At closing time, at about 2:00 a.m. on November 26, De Leon waited for a taxi outside, near the bar's security guard. One of the men who had been in the bathroom came over, along with five or six others. They began insulting De Leon and his friends, "wanting to fight." The security guard walked toward them, and according to De Leon, told them, "If you guys want to fight, you guys fight one on one." De Leon told the security guard he should

3

either be defending them or calling the police. The security guard did not respond, and as De Leon turned back, one of the men was attacking Garcia. De Leon, who claimed the security guard did nothing, "got in the middle of everybody" to try to defend Garcia, attempting to separate him from his attackers. Someone, who was never identified, stabbed him in the abdomen.

De Leon's injuries required surgery. Afterward, the site became infected. He required further surgery, and a hernia developed at the site of the incisions. Further surgery was needed to repair it. According to De Leon, he was out of work for about 18 months as a result of his injuries.

## B. Procedural History

On October 19, 2012, De Leon filed a complaint against Jesus, Lindo, Yang, Sue Hee Yang (collectively the Yangs), and a number of Doe defendants. The form complaint alleged negligence, "intentional tort," premises liability, and "breach of duty to insure." The complaint alleged Lindo was the alter ego of Jesus.[2] The property management company and its owners and Irma were later added via Doe defendant amendments.

The property management company and its owners settled with De Leon subject to various conditions which did not include a monetary payment to De Leon. The court approved the settlement.

The Yangs cross-complained against Jesus and Lindo for indemnity. Jesus and Lindo cross-complained against the Yangs. The Yangs eventually entered into a settlement with De Leon. Their insurer paid De Leon $175,000 and paid the Yangs $69,673.02 in attorney fees, for a total of $244,673.02. The Yangs assigned De Leon all claims they had against Jesus, Irma and Lindo, and in return, De Leon agreed to defend

---

[2] Jesus was named in the complaint as "Jose de Dios Rubio."

4

the Yangs and hold them harmless. The court determined the settlement was entered into in good faith.

What was left after the settlements and subsequent dismissals was De Leon's complaint against defendants, the Yangs' cross-complaint for indemnity (assigned to De Leon) and Jesus and Lindo's cross-complaint for breach of contract against Yang, which De Leon had undertaken to defend.

The case went to trial in February 2015, and first, the jury heard De Leon's complaint against defendants. The jury concluded defendants were negligent, that De Leon was not, and that his damages were $200,000, $100,000 of which was past and future noneconomic loss.

The cross-complaints (the Yangs' cross-complaint for indemnity, now assigned to De Leon, and defendants' complaint for breach of contract, now defended by De Leon) were tried to the court in March 2015. The court also heard the issue of whether Lindo as a corporate entity should be disregarded and liability apportioned entirely to Jesus and Irma. Defendants requested offsets based on the settlements. The court found in De Leon's favor on every issue.

Subsequently, numerous proposed judgments went back and forth, the first of which, as relevant here, was dated March 16, 2015. De Leon admitted an offset for the settlements of $87,500 was appropriate and submitted a revised proposed judgment reflecting that offset on March 25, requesting a judgment of $357,173.02. Further responses and objections were submitted.

In April, the court signed the original March 16 judgment for $444,673.02, with no offset. This was comprised of $200,000 on De Leon's complaint and 244,673.02 on the Yangs' cross-complaint, as assigned to De Leon. Defendants now appeal.[3]

---

[3] Lindo subsequently filed for bankruptcy, but asserts this appeal is not impacted by the automatic stay.

## II

## DISCUSSION

One key error defendants assert is that the special verdict form given to the jury did not include all of the individuals that could reasonably be held responsible for De Leon's injuries – it was limited to the defendants and De Leon only. They argue this was prejudicial error, while De Leon asserts it was either invited error, not error at all, or harmless error.

### A. *Relevant Procedural History*

The exact sequence of events in presenting potential verdict forms to the court is not entirely clear from the record, as some discussions were not reported. But what is clear is that both parties submitted proposed forms. We do not have defendants' original proposed form in the record, but according to a declaration by defendants' attorney Edwin Printemps, that form began with CACI No. 5012, which is an introduction to a special verdict form. De Leon's attorney objected to the inclusion of the instruction, but according to Printemps, the court overruled the objection. The court asked defendants' counsel to provide a copy of the form with a clearer numbering system. Defendants then submitted a revised proposed form, which again began with CACI No. 5012, and went on to ask whether various individuals, both parties and nonparties, were negligent, including the security guard, Jesus, Irma, and Yang.

For each individual as to whom the jury answered "yes," they were then asked to decide whether each was a substantial factor in causing De Leon's injury. The defendants' form then asked for a total of damages, if any, that De Leon had suffered, broken down by past and future, economic and noneconomic. The next questions related to whether De Leon was negligent, and if so, whether his negligence was a substantial factor in causing his harm. The jury was next asked whether the unknown person who stabbed De Leon was a factor in causing his harm, and if so, whether that person was a

6

substantial factor.  Finally, the form called upon the jury to assign percentages of responsibility for De Leon's harm, with the total adding up to 100 percent:

> "Security guard:  _____%
>
> "Jesus De Dios:  _____%
>
> "Irma De Dios:  _____%
>
> "Song Oh Yang:  _____%
>
> "Marco De Leon:  _____%
>
> "Unknown person who stabbed Marco De Leon:  ____%"

De Leon's proposed form, on the other hand, asked whether "any defendant" (meaning Lindo, Irma, or Jesus) were negligent, and if so, whether they were a substantial factor in causing harm to De Leon.  The form next asked for De Leon's "total damages," broken down by past and future economic and noneconomic loss.  The next questions asked whether De Leon was negligent, and if so, was a substantial factor in causing his harm.  The final question asked the jury to assign percentages of fault to "Defendants" and De Leon, with the total adding up to 100 percent.

On the record, counsel and the court discussed the proposed forms. Printemps identified two specific objections to De Leon's form, the "lumping of all the defendants together" and the exclusion of Yang.  He also said:  "[I]n terms of negligence, I listed each of the people in the universe of causation as I saw in the case. . . ." Defendants' trial brief on damages had raised this same issue, arguing "plaintiff's damages must be apportioned among the universe of tortfeasors, including nonjoined defendants, such as the stabber."  (Original boldfacing omitted.)

The court also remembered matters differently than defense counsel with respect to the inclusion of the prefatory instruction.  The court admonished defense counsel for including CACI No. 5012 in his revised form:  "Mr. Printemps, once again, I told you last week with respect to your form that I didn't want the CACI instruction heading this form and you went ahead and submitted it that way anyhow.  [¶]  And you

7

have done some work on this in breaking up negligence but again, with a phase-two trial dealing with the issue of responsibility for or liability for, I don't see your form as working for this phase of the trial, not given the state of the evidence and the state of the bifurcation. [¶] And so I hear you protesting for the record but the problem is that you're protest is not backed up with a verdict form that is helpful given again, the state of the case. [¶] So we're going to go ahead at this point then and not give [CACI No.] 3933[4] and I think that that's going to be an issue for phase two."

Printemps said: "Your honor, I submitted a form this morning because I'm looking at a copy that I have and there's nothing at the end of the verdict form. It's possible that you have one that – I do have the stuff in front."

The court replied: "That's what I was talking about, the stuff in front doesn't belong on a verdict form."

Printemps: "Okay."

The court: "It's improper. So we're giving the plaintiff's verdict form to the jury after lunch."

On the form as returned by the jury, the jury crossed out "defendants" and apportioned fault 49 percent each to Jesus and Irma, and 2 percent to Lindo. Before adjourning, the court told counsel: "Just for the record, I consider the apportionment that the jury indicated on the jury form to be advisory at this point. So there are issues I think to be resolved in phase two."

## B. Standard of Review

We review a special verdict de novo. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc*. (2005) 126 Cal.App.4th 668, 678 ["'[A] special verdict's

---

[4] CACI No. 3933 is the instruction on damages from multiple defendants.

8

correctness must be analyzed as a matter of law'"].)  A special verdict affords no presumption or implied findings in favor of one party or the other.  (*Ibid.*)

*C.  Relevant Law*

The relevant legal principles are clear.  "[D]efendants in tort actions shall be held financially liable in close[] proportion to their degree of fault."  (Civ. Code, §1431.1, subd. (c).)  "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."  (Civ. Code, § 1431.2, subd. (a).)  "[T]he only reasonable construction of [Civil Code] section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries,* not merely that of 'defendant[s]' present in the lawsuit.  [Citation.]"  (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603.)

Accordingly, in order to determine each defendant's "'proportionate share of fault,'" the finder of fact must be asked to apportion fault amongst everyone who comprises the "'"'universe' of tortfeasors" including "nonjoined defendants."'"  (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1156.)  Therefore, asking the jury, as De Leon's verdict form did, about his "total damages," and at the same time, asking *only* about the fault of defendants and De Leon, and not the security guard, Yang, or the unknown

9

stabber, was clear error.[5]  The verdict that followed allocated 100 percent of fault for all of De Leon's harm to defendants, despite the obvious and undisputed fact that an intentional criminal act was involved.  The verdict form used by the court was fatally flawed because it did not ask the jury to consider the liability of others who might also be at fault.

## D.  De Leon's Arguments

De Leon offers numerous arguments about why using his verdict form was either not error or constituted harmless error.  Each is unavailing.[6]

### 1.  Invited Error

According to De Leon, defendants' "fail[ure] to supply a clean copy" constituted "invited error."  While we conclude an improper special verdict form was erroneously used, the error was not "invited."

"The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal.  [Citation.]  . . .  At bottom, the doctrine rests on the purpose of the principle, which is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court."  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)  Had the defendants' form been legally erroneous, and had the court used it, the doctrine of invited error would prevent them from complaining about it on

---

[5] Indeed, under the language in *Diaz v. Carcamo*, *supra*, 51 Cal.4th 1148, asking the jury to apportion fault to Jesus and Irma, rather than the security guard, was probably error as well.  When the claim against the employer is solely through respondeat superior, and there is not a separate claim for negligent entrustment, hiring, or retention, only the employee's fault should be allocated by the jury.  (See *Id.* at p. 1157.)

[6] Some of these arguments, as set forth in De Leon's brief are repetitive, and we shall not address each point more than once.

appeal.  But that is not what happened – at worst, defendants failed to omit the prefatory instruction.  What seems to have been a mistake did not "invite" the court into using De Leon's erroneous form instead.  All the court would have been required to do in order to use defendants' form was to remove the objectionable prefatory instruction, a simple matter of reprinting the form, removing the page or blacking out the instruction.  We reject De Leon's claim of invited error.

### 2.  *Waiver*

De Leon also argues defendants raised "only two distinct objections" to his verdict form in the trial court, quoting Printemps' comments during discussion of the verdict form.  He therefore argues defendants cannot now raise any other objections.  This is a selective reading of the record.  In the course of the same discussion, Printemps pointed out that defendants' verdict form listed "each of the people in the universe of causation" in the case.  This reflects an argument in favor of apportioning fault among all possible tortfeasors.  Defendants also raised the same issue in their trial brief on damages.  Accordingly, we find this issue was properly preserved for appeal.

### 3.  *"Lumping" of Defendants and Exclusion of Yang*

We need not belabor this next argument long.  De Leon sets forth contentions as to why each of the specific objections Printemps raised was invalid.  With respect to the "lumping" together of the defendants, we agree that were this the only problem with the verdict form, the jury cured it by taking it upon itself to apportion fault among defendants.  But as we discussed above, it is not.  Therefore this is really neither here nor there.  The problem was not the "lumping" together of the defendants, but the exclusion of all other parties who might have played a role in De Leon's harm.

11

As to the exclusion of Yang, De Leon claims it was not error because he was not a party to the trial and because, by agreeing to bifurcate the cross-complaints, the defendants agreed to completely remove Yang from the case before the jury.

For his first proposition, De Leon cites no authority, which is unsurprising, given that case law says exactly the opposite. Yang should have been included on the verdict form because he was within the "universe" of potential tortfeasors who caused De Leon's harm.

As for the second contention, the stipulation between the parties stated the cross-complaints would be tried to the court. But the cross-complaints are not relevant here; the question is Yang's liability to De Leon in De Leon's complaint, which was an issue expressly reserved for the jury in the stipulation. And under the law as stated above, Yang (along with the security guard and the unknown stabber) should have been included on the verdict form.

### 4. Jury Instruction vs. Verdict Form

In their brief, defendants point out that CACI No. 406[7] was read to the jury at the agreement of both parties. After the instructions were read and the jury retired to deliberate, the court said to counsel: "I read [CACI No.] 406 a portion [*sic*, probably "apportionment"] of the responsibility which is a little bit of a problem which we actually are not asking them on the verdict form to apportion." De Leon's counsel's opinion was that the instruction should not be sent into the jury room. Printemps said: "Since I have no opinion [*sic*, probably "option"], your honor, since all the possible tortfeasors, they're

---

[7] In part, CACI No. 406 reads: "If you find that the [negligence/fault] of more than one person including [*name of defendant*] [and] [[*name of plaintiff*]/ [and] [*name(s) or description(s) of nonparty tortfeasor(s)*]]] was a substantial factor in causing [*name of plaintiff*]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent."

12

not listed on the form.  I'll submit it."[8]  The court decided not to give a copy of CACI No. 406 to the jury.  Defendants apparently raised this to point out the confusion between the instruction given and the verdict form, which did not ask them to apportion fault between defendants and any nonparty tortfeasors.

We discuss this issue here only because De Leon argues that the jury "followed that instruction by apportioning damages amongst those to whom it assessed fault."  He contends that "because the jury did apportion fault, there is no reversible error merely because the jury decided not to apportion fault to the person that stabbed the Plaintiff as the Defendants would have hoped.  This is necessarily so because the jury was provided instruction [CACI No.] 432 concerning superseding causation in addition to apportionment."[9]

This argument is misplaced, however, because despite whatever instructions the jury was given, the verdict form gave them only two choices when it came to apportioning fault – De Leon, or the defendants.  That was it.  This gave the clear message to the jury that these were the *only* parties they could consider when deciding who was at fault.  At best, the contradictory instructions created confusion; at worst, they were simply ignored as irrelevant because of the form's language.  Neither possibility is sufficient to save the decision resulting from the flawed verdict form.

---

[8] De Leon argues again that this constituted consent to the court's decision not to send a copy of the instruction to the jury.  It is not important, however, because defendants do not claim this was independently reversible error in any event.  If it were relevant, we would disagree with De Leon.  Printemps had already lost on the issue of the verdict form, so no matter what the jury read in the instructions, they were still being asked to consider only defendants' fault.

[9] CACI No. 432 is the instruction on third party conduct as a superseding cause.

13

### 5. *Prejudicial Error*

At numerous points, De Leon argues that any error as to the special verdict form was harmless. Simply put, he is wrong.

This is not a close call. This was a case where a criminal act was the actual cause of De Leon's injuries – an unknown party stabbed him. Whatever the fault of defendants, there was no substantial evidence to support the contention it was greater than the stabber or that they were the *only* parties at fault. The jury was simply not given the opportunity to decide the percentage of responsibility that should be apportioned to the unknown stabber, in clear contravention of the law. Saddling defendants with sole responsibility for De Leon's injuries constituted prejudicial error and a miscarriage of justice, requiring reversal and a new trial.

## E. *The Cross-Complaints*

Because the court appears to have based its determinations on the cross-complaints, at least in significant part, on the jury's findings of fact, the court's conclusions on the cross-complaints must be reversed as well.

Defendants raised several errors with respect to bench portion of the trial, most notably with regard to the Yang cross-complaint (as assigned to De Leon), with respect to the issue of damages. In the current judgment, on a case the jury valued at $200,000, De Leon recovered over $600,000 when the $175,000 settlement with the Yangs and the judgment on the cross-complaint is taken into account. Though we need not explore this in any detail, on remand, the issue of whether the Yangs suffered any damages requires careful consideration. Without a preponderance of evidence that De Leon is required to reimburse the Yangs' insurance company, he cannot recover the amount of his settlement with the Yangs twice, once from the insurance company and again from the defendants.

14

Further, as De Leon admits, an offset in the judgment is required to reflect the Yang settlement.


### III

### DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.  Defendants are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

15