Filed 4/18/14  In re Lizbeth J. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re LIZBETH J., a Person Coming Under the Juvenile Court Law. | |
| | D064856 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14618B-C) |
| v. | |
| JOSE J., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy and Patrice Plattner-Grainger, Senior Deputy Counsel, for Plaintiff and Respondent.

Jose J. appeals a juvenile court judgment terminating his parental rights to his children, David J. and Lizbeth J., and choosing adoption as the appropriate permanent plan under Welfare and Institutions Code[1] section 366.26. Jose contends he did not receive the required statutory notice of the section 366.26 hearing. He also challenges the sufficiency of the evidence to support the court's finding that the beneficial relationship exception to the adoption preference is inapplicable. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, the San Diego County Health and Human Services Agency (Agency) filed petitions on behalf of 21-month-old David and four-month-old Lizbeth, as well as their older half sibling, Angie H. Although Angie has a different father, she referred to Jose as her father.[2] The petitions alleged Jose had sexually and physically abused Angie and that the younger siblings were at substantial risk of abuse.

Angie had bruises on her arms, legs, and thigh. She told the examining nurse Jose hit her with his fists and touched her genitalia and buttocks. At the conclusion of the jurisdictional hearing, the court sustained the petitions. The court subsequently declared all three children dependents, removed physical custody from the parents, placed them in foster care, and ordered supervised visits for the parents.[3] This Court affirmed the

---

[1] Statutory references are to Welfare and Institutions Code unless otherwise specified.

[2] On April 9, 2012, the juvenile court found Jose to be the presumed father of David and Lizbeth.

[3] The court ordered no contact between Jose and Angie.

2

juvenile court's jurisdictional and dispositional findings and orders in an unpublished opinion in case number D062478. (*In re David J.* (Jan. 11, 2013, D062478) [nonpub. opn.].)

The Agency's six-month review report dated February 6, 2013, recommended reunification services for the parents be terminated based on their lack of progress. Jose had not participated in sexual abuse treatment and his attendance in individual therapy had been sporadic. The parents had been fairly consistent in their supervised visitation.

During the preceding six months, Jose was depressed and on one occasion reported cutting himself with a razor blade. He also went to the emergency room after undergoing an anxiety attack. The parents remained married, but had reportedly been separated since October 2012. The social worker doubted the parents' claim of remaining separated since they had been observed together holding hands after visits and were seen together on other occasions.

A subsequent addendum report indicated staff at the Casa De Amparo visitation center stated on April 23, 2013, Jose failed to show or call to cancel his appointment for the third time and his visitation at that facility would be terminated. In April 2013, a restraining order was issued against Jose, which listed the mother as the protected person. Jose had become violent with the mother by slapping and pushing her. The social worker continued to recommend termination of reunification services.

At the conclusion of the six-month review hearing on April 26, 2013, the court found the services provided had been reasonable. It also found a return of the children to parental custody would be detrimental and the parents had not made substantive progress

with the provisions of the case plan. It terminated court-mandated reunification services and scheduled a hearing under section 366.26 to select and implement a permanent plan.

On May 2, 2013, Jose filed a notice of intent seeking to challenge the juvenile court's findings and orders entered at the six-month review. This Court subsequently dismissed the matter after Jose's counsel indicated there were no viable issues for review.

The Agency prepared an addendum report dated May 30, 2013, in support of its request for a special hearing. The social worker noted Angie and David had been placed together in the same home since August 17, 2012, and Lizbeth had been in her separate placement since July 24, 2012. The children had maintained their relationships through sibling visits. The social worker recommended transitioning the children into a home willing to care for all three on a long-term basis, but the attorney for the children opposed the request. On July 31, 2013, the court appointed counsel for the two oldest children and a different attorney for the youngest child.

The Agency's addendum report dated August 1, 2013, provided additional information to the court regarding placement options. The social worker recommended Lizbeth be placed together with her siblings in a prospective adoptive home.[4] The siblings had maintained twice weekly visits. The worker noted that since Lizbeth had been in the same placement for the preceding year, the child had formed an attachment with the caregivers. However, the worker opined the benefits of being placed in the same home with her siblings would outweigh any temporary separation anxiety the child might

---

4    The court subsequently denied the Agency's request to move Lizbeth to the same home as the siblings.

experience. Another factor to consider was the fact the prospective adoptive parents for David and Angie were primarily Spanish speaking and Lizbeth had been raised in an English speaking home.

The Agency prepared an assessment report dated August 26, 2013. The report stated the following. Angie and David had adjusted well to their prospective adoptive home, where they had been placed together since June 7, 2013. Lizbeth continued to thrive in her foster home, where she had resided since July 24, 2012. With respect to parental contact and visitation, the social worker noted visits had remained supervised throughout the case. The report's author had personally observed several visits since his assignment to this matter. The first hour of the visit on June 12, 2013, he observed the children interact with the mother, then Jose. When Jose arrived, he hugged both David and Lizbeth. He was attentive to the children and took turns holding each of them. The children had no reaction when it was time for the visit to end.

The visit on June 19, 2013 was held at a local park. Jose attended to both children and took David to the restroom. He took Lizbeth to the water fountain when she was thirsty. At the conclusion of the visit, Jose hugged the kids and said goodbye. The children had no reaction to Jose leaving.

The visit on June 26, 2013 took place at a local park and was similar to the one on June 19. The children displayed no signs of distress when it was time to separate from Jose. David cried when his foster father left at the beginning of the visit.

At the visit on July 3, 2013 both parents were present. The parents switched children and each spent time individually with David and Lizbeth. The parents interacted with the children and supervised them on the play structure.

The social worker recommended adoption as the most appropriate permanent plan. The prospective adoptive parents of David and Angie had an approved adoptive home study and were interested in adopting Lizbeth as well. Additionally, the foster caregivers of Lizbeth wanted to adopt her. There were 13 out-of-county approved adoptive homes interested in adopting a sibling set similar to Angie, David, and Lizbeth.

The social worker opined it would not be detrimental to terminate parental rights. Although the parents had maintained regular visits, the social worker concluded the benefits of adoption outweighed the benefit the children would receive from maintaining a relationship with their parents. The social worker noted the relationship David and Lizbeth had with their parents was positive and the children seemed to enjoy the visits. However, the social worked stated he does not believe the parents have a strong relationship with Lizbeth. And the social worker did not think any of the children shared a parent-child relationship with either parent. Ultimately, the social worker opined the permanency and stability of adoption was in the children's best interests.

The matter came before the court for a section 366.26 hearing on August 26, 2013. The court found notice had been given as required by law. The parents' attorneys set the case for trial. The court ordered counsel for the parents to notify their clients of the next hearing date and continued the matter on the contested hearing calendar.

6

The court held the contested section 366.26 hearing on October 10, 2013. The court received into evidence the Agency's August 26, 2013 assessment report. The author of the report was present and available for cross-examination, but none of the parties chose to examine him. After considering the evidence presented and hearing argument of counsel, the court found by clear and convincing evidence the children were likely to be adopted and none of the statutory exceptions applied. It terminated parental rights and ordered a permanent plan of adoption for the children.

Jose timely appealed.

DISCUSSION

Jose raises two issues in this appeal. First, he contends he did not receive adequate notice of the section 366.26 hearing. He argues that the defective notice violated his due process rights and constituted a structural defect requiring automatic reversal. Second, Jose maintains that the juvenile court erred when it did not apply the beneficial relationship exception to preserve his relationships with both David and Lizbeth. We reject both of these contentions.

I

*NOTICE OF THE SECTION 366.26 HEARING*

"[P]arents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children. [Citation.] And due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]" (*In re Melinda J*. (1991) 234 Cal.App.3d 1413, 1418.)

7

Section 294 concerns notice to a dependent child's parents of the hearing terminating parental rights or establishing guardianship under section 366.26. As relevant here, the statute provides, "If the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26, the court shall advise the parent of the date, time and place of the proceedings, their right to counsel, the nature of the proceedings, and the requirement that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, or long-term foster care for the child. The court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter by first-class mail to the parent's usual place of residence or business only." (§ 294, subd. (f)(1).) The statute also allows personal service to the parent named in the notice. (§ 294, subd. (f)(3).) "Regardless of the type of notice required, or the manner in which it is served, once the court has made the initial finding that notice has properly been given to the parent, or to any person entitled to receive notice pursuant to this section, subsequent notice for any continuation of a Section 366.26 hearing may be by first-class mail to any last known address, by an order made pursuant to Section 296, or by any other means that the court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing. However, if the recommendation changes from the recommendation contained in the notice previously found to be proper, notice shall be provided to the parent, and to any person entitled to receive notice pursuant to this section, regarding that subsequent hearing." (§ 294, subd. (d).)

8

Jose argues he did not receive proper notice of the section 366.26 hearing. Our review of the record indicates the following. At the conclusion of the six-month review hearing on April 26, 2013, the court made certain findings:

> "And further by clear and convincing evidence, [the court finds] that the parents have not made substantive progress with their case plans. The parents have gone to the appointments as indicated before. But for the reasons identified by the Court, the mere attendance has not been sufficient to gain any kind of traction to address the assessed risk. [¶] I do find by clear and convincing evidence that there's not a substantial probability that the children can be returned to the parents by the permanency hearing date. Again, the denial is still very significant. The parents have recently engaged in a domestic violence incident. So I will order that a selection implementation be held on August 26 at 8:30. Both parents are ordered to return."

The court further explained to the parents what would occur at the August 26 section 366.26 hearing:

> "In addition, I'm required by statute to inform you, that on August 26 of this year, the Court will be conducting a selection and implementation hearing. Each of you are [sic] entitled to have an attorney represent you . . . the CPO division is representing the mother. Ma'am, they will remain your attorneys throughout. [¶] And the PPO division is representing father. Sir, they will remain your attorneys throughout. [¶] The Agency will be preparing an assessment report with a set of recommendations. Each of you will be informed of those recommendations prior to the next hearing. If either of you are in agreement with the recommendations, you do have a separate entitlement to set that matter for a contested hearing. [¶] The recommendation may be for what's called long term foster care, legal guardianship with a third person or relative, or request that the Court find that the children are likely to be adopted. If the evidence supports the latter recommendations, then the Court would have to determine whether or not the rights as parents should be terminated to facilitate adoption."

At the end of the six-month review hearing, the court ordered the parents to stay in the courthouse so the social worker could provide notice.

9

The record contains a notice of hearing on selection of permanent plan that states a hearing will be held on August 26, 2013 at 8:30 a.m. in department nine. The documents states "Notice to [Jose]." It is signed and dated April 26, 2013. The related proof of service states that the document was served by personal service, but does not indicate the date or time of service. The proof of service is also signed April 26, 2013 (the same day as the six-month review hearing).

In addition, the record contains an amended proof of service that states Jose was personally served with the notice of the section 366.26 hearing on April 26, 2013 at 3:38 p.m. at 325 S. Melrose Drive, Vista, California 92081. This is the address of the court.

A copy of the court's minute order after the April 26 six-month review hearing was mailed to Jose. The report included the date and time of the section 366.26 hearing.

Jose was not present at the August 26, 2013 hearing, but his attorney appeared at the hearing. At the parents' request through their counsel, the court continued the hearing to October 10, 2013 at 1:30 p.m. The court then asked, "Counsel, if contacted, would you advise their clients of the trial date?" Jose's attorney responded, "Yes, your honor."

A copy of the minute order from the August 26, 2013 hearing was mailed to Jose. That order indicated the contested section 366.26 hearing was set for October 10, 2013 at 1:30 p.m. in department nine.

At the October 10 hearing, Jose was not present, but was represented by his attorney. The court asked if there were any preliminary matters to be addressed. Jose's

10

attorney did not object to the notice or raise any issue about Jose's absence from the hearing.

The Agency contends Jose has forfeited his claim by failing to raise the issue with the juvenile court. Jose does not dispute that he did not raise the issue below, but instead, attempts to distinguish the cases the Agency cites. We agree with the Agency.

Because Jose did not raise the notice issue with the juvenile court, he has forfeited this issue on appeal. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528 (*Davenport*) ["Preliminarily, we note that Jill's argument as to the Judicial Council form was not made below, and thus is waived or forfeited."]; *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685 ["contentions or theories raised for the first time on appeal are not entitled to consideration"]; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 ["It must appear from the record that the issue argued on appeal was raised in the trial court. If not, the issue is waived."].) This is especially true here where there is disagreement between the parties regarding personal service and whether Jose's attorney provided him with notice of the continued hearing date. If this issue was brought to the juvenile court's attention, it could have addressed the issue by taking evidence and resolving the factual disputes Jose raises on appeal. Having not done so, Jose asks us to address the issue on a cold record that has not been fully developed on the subject issue. As such, he has forfeited this issue on appeal.

Further, the record shows that Jose had actual notice of the August 26, 2013 hearing date for the section 366.26 hearing. Jose was present at the April 26 hearing when the court set the section 366.26 hearing on August 26 at 8:30 a.m. Also, the record

11

contains an amended notice indicating that Jose was personally served with notice of the hearing at the courthouse on April 26, 2013 at 3:38 p.m. Personal service on that date is consistent with the transcript of the hearing where the court ordered the parents to remain at the courthouse so they could be personally served. We also note that Jose was served via mail with the minute order of the April 26 hearing that stated the section 366.26 hearing would be held on August 26, 2013 at 8:30 a.m. in department nine. Therefore, if we did address Jose's argument on the merits, we would determine he had notice of the August 26 hearing.

The record, however, is less clear regarding whether Jose had notice of the continued hearing date on October 10. Parents remain entitled to notice of the continued hearing date. (*In re Phillip F.* (2000) 78 Cal.App.4th 250, 258-259.) Here, although Jose did not appear at the August 26 hearing, he, along with the children's mother, through counsel, requested a continuance of the hearing. The court continued the hearing to October 10 and requested that counsel provide notice to their respective clients. Jose was represented by the same counsel throughout the proceeding, and the juvenile court could have reasonably concluded that ordering Jose's attorney to provide Jose with notice was reasonably calculated to provide Jose with notice of the continued hearing. (See § 294, subd. (d).) Moreover, Jose was mailed a copy of the August 26 minute order detailing the continued date of the hearing.

Yet, we do not reach this issue for two reasons. First, as we discuss above, we find that Jose forfeited this issue by not raising it with the juvenile court. (See *Davenport*, *supra*, 194 Cal.App.4th at p. 1528.) Second, any error associated with a

failure to provide notice to Jose of the continued hearing date would be harmless beyond a reasonable doubt under the *Chapman*[5] standard.

Jose asserts the failure to give notice is a structural error that requires automatic reversal. To this end, he cites *In re Jasmine G.* (2005) 127 Cal.App.4th 1109. However, that case is distinguishable from the instant matter because the court in *Jasmine* addressed a failure to even attempt to give the parents statutory notice of the original section 366.26 hearing. (See *id*. at p. 1116 [holding "the failure to attempt to give a parent statutorily required notice of a selection and implementation hearing is a structural defect that requires automatic reversal."].) As we previously discussed, this is not the case here. Jose had notice of the original hearing date. The record is less clear whether he had notice of the continued hearing date. Yet, even if we would assume that Jose did not receive notice of the continued hearing date, in reviewing the effect of that error, we apply the *Chapman* harmless error standard. (See *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 ["Here, we find the lack of notice of a continuance is in the nature of a trial error."].)

Having reviewed the record under the *Chapman* standard, we conclude any failure to notify Jose of the continued section 366.26 hearing date was harmless beyond a reasonable doubt. "The primary issue in a section 366.26 hearing is whether the dependent child is likely to be adopted." (*In re Angela C.*, *supra*, 99 Cal.App.4th at p. 395.) Jose's only challenge to the juvenile court's determination that the children were

---

5        *Chapman v. California* (1967) 386 U.S. 18.

likely to be adopted is that it did not apply the beneficial relationship exception to preserve his relationship with David and Lizbeth. We address this issue in the next section wherein we determine Jose's argument is without merit. Moreover, the Agency's assessment of the children's adoptability satisfied statutory requirements. We therefore find beyond a reasonable doubt that any error in notice was harmless as to the court's finding of the children's adoptability.

## II

### *THE BENEFICIAL RELATIONSHIP EXCEPTION*

The juvenile court may terminate parental rights if there is clear and convincing evidence of adoptability. (§ 366.26, subd. (c)(1).) After the court determines a child is likely to be adopted, the burden shifts to the parent to show the termination of parental rights would be detrimental to the child under one of the four exceptions listed in section 366.26, subdivision (c)(1)(B). (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.) An exception to the termination of parental rights exists when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"The parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.] Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) The parent must also show that his or her relationship with the child " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a

14

permanent home with new, adoptive parents.' " (*Ibid*., quoting *In re Autumn H*. (1994) 27 Cal.App.4th 567, 575 (*Autumn H*.).)

We review the juvenile court's ruling under the substantial evidence test, viewing the evidence in the light most favorable to the prevailing party. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) We do not attempt to resolve conflicts in the evidence or evaluate the weight of the evidence; rather, we must draw all reasonable inferences in support of the court's findings and affirm the order even if there is substantial evidence supporting a contrary finding. (*In re J.I.* (2003) 108 Cal.App.4th 903, 911.)

Here, Jose does not challenge the juvenile court's finding that David and Lizbeth are adoptable. Instead, he argues his parental rights should not have been terminated given the beneficial nature of his ongoing relationship with the children. The Agency acknowledges that Jose had regular visitations with the children. Nonetheless, the Agency asserts Jose did not show he occupied a parental role in his children's lives and failed to show his relationship with the children outweighed the benefits of adoption. (See *Autumn H.*, *supra*, 27 Cal.App.4th at pp. 575-577.) Examining the evidence in the light most favorable to the judgment, we agree with the Agency.

David and Lizbeth were taken into protective custody as infants and had been in out-of-home care for 18 months when the court held the section 366.26 hearing. In the August 26 addendum report, a social worker who observed Jose's visits with David and Lizbeth wrote the children appear to have a positive relationship with their parents and enjoy their visits with them. The social worker noted the children do not ask about their parents before or after visits. Also, in one visit, David did not want to be with Jose and

15

turned away from him and went toward his current caretakers. Additionally, the social worker stated that the parents do not have a strong relationship with Lizbeth. Ultimately, the social worker opined on balance the children would benefit more from a permanent plan of adoption.

Jose largely ignores the social worker's observations and conclusions in the addendum report, and instead argues his "frequent and loving visits with his son and daughter" evidence a significant bond. He thus insists this case is analogous to *In re S.B.* (2008) 164 Cal.App.4th 289 (*S.B.*). We are not persuaded.

In *S.B.*, *supra*, 164 Cal.App.4th 289, we concluded the beneficial relationship exception does not require that a parent establish that a child's primary attachment was to him or her. (*Id.* at p. 299.) Nonetheless, since we issued our opinion in *S.B.*, we have discouraged the improper and inaccurate use of that opinion. (See *In re Jason J.* (2009) 175 Cal.App.4th 922, 937.) Further, we expressly limited the holding of *S.B.*: "[W]e once again emphasize that *S.B.* is confined to its extraordinary facts. It does not support the proposition a parent may establish the parent-child beneficial relationship exception by merely showing the child derives some measure of benefit from maintaining parental contact." (*In re C.F., supra,* 193 Cal.App.4th at pp. 558-559.)

Further, *S.B*, *supra*, 164 Cal.App.4th 289 is factually distinguishable from the instant matter. In *S.B.*, the record included a bonding study by a doctor who described the bond between the father and the child as fairly strong and opined that there was potential for harm if the child lost her parental bond with the father. (*Id.* at pp. 295-296.) Here, the record is devoid of any evidence from a mental health provider, social worker,

16

or bonding expert that terminating parental rights so that David and/or Lizbeth could be adopted would cause either child emotional or psychological detriment.

Accordingly, we conclude substantial evidence supports the juvenile court's finding that the beneficial relationship exception did not apply here.

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.

17